IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal Action No. 06-386 |
| | ) |
| RICHARD DUNBAR | ) |

MEMORANDUM ORDER

Gary L. Lancaster,
District Judge.                                        May 15, 2007

  Defendant filed a motion to suppress evidence seized pursuant to a search warrant. Defendant has standing to bring this motion. Defendant does not contest the validity of the search warrant or the sufficiency of the affidavit of probable cause. Defendant contends that a certain item seized, namely a box of rifle ammunition, was outside the scope of the search warrant and should be suppressed. Defendant further argues that no exception to the search warrant requirement applies to the instant case.

  The government concedes that the ammunition was beyond the scope of the search warrant, but contends that the "plain view" exception to the search warrant applies. As such, the government argues that the seizure was proper. For the following reasons, the motion is denied.[1]

---

[1] The court held a suppression hearing on May 4, 2007 and orally denied the motion to suppress. The following is the court's reasoning for denying the motion.

I.   <u>FINDINGS OF FACT</u>

Special Agent Christopher Johnson and Special Agent Todd Prewitt of the Federal Bureau of Investigations (FBI) testified at the suppression hearing. I have taken into account the traditional methods of assessing the credibility of a witness: their appearance, behavior and manner while testifying, as well as the quality of the witnesses' knowledge, understanding, and memory. Based on all these factors, the Court finds the following:

On September 12, 2006, FBI Special Agent Todd Prewitt presented an application for a search warrant to United States Magistrate Judge Francis X. Caiazza. Attached to the application was an affidavit of probable cause sworn to by Agent Prewitt.

Magistrate Judge Caiazza reviewed the affidavit and application, found probable cause to search the building and issued a warrant that authorized the search and seizure of the following items:

   1) Notes, paperwork, or other documents concerning the person identified in the affidavit as C.G., her family or her property;

   2) Maps, bills, receipts or other documents evidencing travel to or from West Virginia including but not limited to credit card statements, gas receipts, hotel receipts or bills, restaurant receipts or bills from June 1, 2006 to present, a card from Clyde;

   3) Copies of any restraining order against defendant;

   4) Telephone bills;

2

    5) Journals or diaries;

    6) Items that were stolen from the home or property of C.G. including wall calendar for 2006, telephone book belonging to C.G., pictures of C.G., bank statements in the name of C.G., clothing belonging to C.G.;

    7) Spray paint (grey or white);

    8) Life insurance policy for C.G.;

    9) Receipts for diesel fuel or gasoline.

The warrant was executed on September 13, 2006.

Special Agent Christopher Johnson was one of the agents who executed the warrant and was assigned to search defendant's garage.

While searching the garage, Agent Johnson noticed a shelf adjacent to a work bench. The shelf had a box with rifle ammunition on it. The box had the word "Remington" on it and Agent Johnson immediately recognized it as ammunition.

Agent Johnson was aware that defendant had a civil protection from abuse restraining order against him, and knew from his experience that it was against the law for an individual subject to a protection from abuse order to possess ammunition.

Agent Johnson consulted with the agent in charge of the search, Agent Prewitt, on whether the ammunition should be seized. Agent Prewitt instructed Agent Johnson to seize the box of ammunition.

Based on his previous experience as a state law enforcement officer and his experience as an FBI agent, Agent Prewitt believed the ammunition was evidence of a crime.

II.  REASONS FOR THE DECISION

In a motion to suppress evidence seized pursuant to an alleged violation of the Fourth Amendment, the allocation of the burden of proof depends upon whether or not a warrant was issued. In federal courts, if the search or seizure was effected pursuant to a warrant, the defendant bears the burden of proving its illegality; if the government acted without a warrant, the government bears the burden of establishing legality. See United States v. Johnson, 63 F.3d 242 (3d. Cir. 1995).

In the instant case, the government concedes that the ammunition was not within the search warrant's list of things to be seized. However, the government contends that the seizure of ammunition was lawful pursuant to the "plain view" exception to the warrant requirement.

Under the plain view doctrine, officers may seize contraband without a warrant if: (1) the officers are lawfully present at the place from which the evidence could be plainly viewed, (2) the incriminating character of the evidence is immediately apparent, and (3) the officers have a lawful right of access to the object itself. United States v. Menon, 24 F.3d 350,

4

359 (3d. Cir. 1994) (citing Horton v. California, 496 U.S. 128, 136-137 (1990)).

The plain view doctrine allows officers to seize incriminating evidence in plain view during the course of a lawful search because such a seizure does not involve an intrusion on privacy. "If the interest in privacy has been invaded, the violation must have occurred before the object came in plain view..." Horton v. California, 496 U.S. 128, 141 (1990). The rationale of the plain view doctrine is that if contraband is left out in open view and is observed by an officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus, there has been no "search" within the meaning of the Fourth Amendment. However, if the officers lack probable cause to believe that the object in plain view is contraband, the plain view doctrine cannot justify its seizure.

Defendant does not dispute that the agents were lawfully present in his home. Further, defendant does not dispute that the officers had a lawful right of access to the object. Defendant argues, however, that the officers lacked probable cause to believe the ammunition was contraband. Defendant contends that the agents had not read a copy of the restraining order against defendant and therefore, the incriminating nature of the ammunition could not have been readily apparent.

5

Defendant was indicted of illegally possessing ammunition, in violation of 18 U.S.C. § 922 (g)(8). The statute provides, in relevant part, that:

> (g) It shall be unlawful for any person -
>
>> (8) who is subject to a court order that -
>>
>> . . .
>>
>>> (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
>>
>> . . .
>>
>> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Clearly, this statute does not require the FBI agents to read the restraining order itself to determine whether it prohibits defendant from possessing ammunition.[2] The statute criminalizes possession of ammunition by people who have a restraining order against them, as long as certain conditions are met. Therefore, the relevant inquiry is whether the officers knew that defendant had a restraining order against him and whether they recognized the ammunition as contraband.

---

[2] Although not relevant to this inquiry, we note that the restraining order did in fact prohibit defendant from possessing ammunition.

6

Agent Johnson testified that he was aware that defendant had a restraining order against him. In fact, Agent Johnson was present when a copy of the restraining order was found in defendant's home. Agent Johnson also credibly testified that as soon as he saw the box of ammunition "it raised a red flag." Agent Johnson was aware that a person with a restraining order could not possess firearms and, in his experience, firearms and ammunition were treated the same in courts of law.

Agent Prewitt interviewed the individual being protected under the restraining order and presented an affidavit to Magistrate Judge Caiazza referring to, among other things, the restraining protective order against defendant. Agent Prewitt knew it was a violation of state law to for a person with a protective order against them to possess ammunition, and thought that it was a violation of federal law as well. Agent Prewitt testified unequivocally that when he saw the ammunition he "knew it was evidence of a crime because of the protective order."

This evidence satisfies the second requirement of the plain view exception to a search warrant. That is, the incriminating nature of the ammunition was immediately apparent to both the agent who initially saw the ammunition and the agent, who made the decision to seize the ammunition. The fact that the agents may not have read the protective order prior to the search is not relevant to this inquiry.  As such, the plain view exception to

the search warrant requirement applies in this case. The motion to suppress is denied.

BY THE COURT:

_____, J.

cc:    All Counsel of Record